UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM R. CARTER, SR.,

      Plaintiff,

v.                                                                    Case No. 8:25-cv-493-KKM-AEP

AMERICREDIT FINANCIAL
SERVICES, INC., *doing business as*
GM FINANCIAL,

      Defendant.

_____

## ORDER

Pro se plaintiff William R. Carter, Sr., sues AmeriCredit Financial Services,

Inc., which does business as GM Financial, for myriad common law and statutory

claims. Am. Compl. (Doc. 9-1); *see* Compl. (Doc. 1). GM Financial moves to compel

arbitration and stay the case. MTC (Doc. 13). Carter opposes. Resp. (Docs. 15, 16,

16-1).[1] For the reasons below, I grant GM Financial's motion.

---

[1] Though filed as three separate documents on the docket, Doc. 15, Doc. 16, and Doc. 16-1 are three parts of a single brief. I cite them based on the pagination that Carter gave them, with pages 1 through 10 appearing in Doc. 15, pages 11 through 20 appearing in Doc. 16, and pages 21 through 24 appearing in Doc. 16-1.

This action arises from Carter's 2024 purchase of a Dodge Durango. Am. Compl. ¶¶ 7–8. The facts are set out in more detail in orders in Carter's action against the dealer, DRJ Venice, LLC, that sold him the Durango. *See Carter v. DRJ Venice LLC*, No. 8:25-CV-99-KKM-SPF, 2025 WL 343498, at *1–2 (M.D. Fla. Jan. 30, 2025) (*Carter I*); *Carter v. DRJ Venice LLC*, No. 8:25-CV-99-KKM-SPF, 2025 WL 1125075, at *1–2 (M.D. Fla. Apr. 16, 2025) (*Carter II*). As relevant here, Carter and his son, William Carter, Jr., executed a Vehicle Buyer's Order on March 26, 2024, for the purchase of the Dodge Durango from DRJ Venice. Jones Decl. ((Doc. 13-1) at 2–5) ¶¶ 8–9; *see* Buyer's Order ((Doc. 13-1) at 19–23). They also purportedly executed a Retail Installment Sales Contract, *see* Jones Decl. ¶ 8; Retail Installment Sales Contract ((Doc. 13-1) at 12–17), though Carter claims that he and his son "never signed" it, Am. Compl. ¶ 7. After Carter and DRJ Venice finalized the transaction, DRJ Venice "assigned all of its rights and interest in the Contract to GM Financial," and GM Financial continues to hold the rights under the agreement. Jones Decl. ¶¶ 10–11.

After I denied a motion in Carter's action against DRJ Venice that sought injunctive relief against GM Financial, *see Carter I*, 2025 WL 343498, at *2–3, Carter filed this action, *see* Compl.

2

GM Financial moves to compel arbitration under the arbitration clauses in both the Buyer's Order and the Retail Installment Sales Contract. *See* MTC. Carter opposes, arguing that no valid arbitration agreement exists, that GM Financial is not a party to the Buyer's Order, that he is not equitably estopped from opposing arbitration, that the arbitration clause is unconscionable, and that his waiver of his right to a jury trial was not knowing and voluntary. *See* Resp. at 6–12. He also raises several policy arguments. *Id.* at 12–18.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emps. Ins. Of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The Federal Arbitration Act reflects a liberal federal policy favoring arbitration. *Jpay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). If parties agree to arbitrate a dispute, the court must enforce that agreement. *Id.*

Of course, no party can be forced to submit to arbitration if they have not agreed to do so. *Emps. Ins. Of Wausau*, 251 F.3d at 1322. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). When a party seeking to avoid arbitration

claims that no agreement exists, "[s]tate law generally governs" because "whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotation omitted) (emphasis omitted).

The Court employs a "summary judgment-like standard" to determine whether an arbitration agreement exists. *Bazemore*, 827 F.3d at 1333. If there is a genuine dispute of fact concerning the making of the arbitration agreement, the FAA instructs that "the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4; *see also Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Bazemore*, 827 F.3d at 1333 (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quotation marks omitted). If there is no genuine dispute of fact and the Court determines that an applicable agreement to arbitrate exists, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

GM Financial offers a facially binding arbitration agreement covering the dispute at issue. The arbitration provision from the Retail Installment Sales Contract reads, in part,

> *Any claim or dispute*, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), *between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)* shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Retail Installment Sales Contract at 6 (emphasis added). The contract bears Carter's electronic signature acknowledging the arbitration agreement and accepting the contract's terms. *Id.* at 2, 6. A GM Financial executive swears that DRJ Venice assigned its rights under the contract to GM Financial and that GM Financial holds those rights today. Jones Decl. ¶¶ 10–11.[2] As GM Financial is the agreement's assignee, and Carter's action "arises out of or relates to" the purchase of the Durango, Retail Installment Sales Contract at 6; *see* Am. Compl. ¶¶ 7–26, this action is facially arbitrable.

---

[2] Carter attacks Jones's declaration, but he provides no evidence casting doubt on any of Jones's claims. *See* Resp. at 16–18.

Carter fails to show that he should not be compelled to arbitrate. *See AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 687 (Fla. 4th DCA 2015) ("The party seeking to avoid arbitration bears the burden of proving a contractual defense to enforcement of the arbitration agreement."). Most crucially, Carter fails to provide any evidence that the contract is invalid. He claims in his response that the contract "was never validly executed" and "was forged," but he provides no evidence in support of this claim. Resp. at 6; *see Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("[A] sentence in an unsworn brief is not evidence."). Carter makes much of time stamp on the filed copy of the Retail Sales Installment Contract, which reads "THIS CUSTOMER COMPLETED COPY WAS CREATED ON 03/27/2024 11:52:52 PM GMT," the day following the contract's execution. Retail Installment Sales Contract; *see* Am. Compl. ¶ 8; *see also* Resp. at 8. Yet the "Document Activity History Report" Carter himself submits shows that his signature was added at "03/27/2024 01:20:22 AM GMT"—or 9:20 PM Eastern Time on March 26, 2024, precisely when Carter has claimed he was at the dealership. (Doc. 16-6) at 4; *see Carter II*, 2025 WL 1125075, at *3 ("[Carter] says the stamp indicates that the agreement was printed after 9:00 PM and shows that he was 'being rushed through the process without explanation of what was being signed.' "). Accordingly, Carter

6

has not shown that he did not sign and assent to the Retail Installment Sales Contract.

Carter's other arguments mirror those he made in opposition to DRJ Venice's motion to compel arbitration, and—as he presents no new relevant evidence—they fail for the same reasons. For one, Carter again fails to show that the arbitration clause is unconscionable. *See Carter II*, 2025 WL 1125075, at *3–4; Resp. at 11. He likewise fails to show that the agreement is unenforceable because his waiver of his jury-trial right was not knowing and voluntary, as "contract principles govern the enforceability of arbitration agreements and . . . no heightened 'knowing and voluntary' standard applies." *Carter II*, 2025 WL 1125075, at *5 (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005)); Resp. at 11–12. And though he again argues that he never "agreed to arbitrate disputes about forged contracts, civil rights violations, and deceptive business tactics," Resp. at 12, under the agreement, "[i]t is . . . for the arbitrator to decide which of Carter's claims are arbitrable," *Carter II*, 2025 WL 1125075, at *4; *see* Retail Installment Sales Contract at 6 (providing that "the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute" are arbitrable).

Last, Carter claims that GM Financial is merely using arbitration to avoid accountability and that it would be inequitable to compel him to arbitrate. Resp. at 14 ("Arbitration should not be weaponized to strip citizens and consumers of their rights and protect corporate misconduct from the public eye."); *see also id.* at 18, 23. Yet federal law favors arbitration, and courts are bound to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). While Carter may wish he had not agreed to this arbitration provision, he provides no evidence that he did not do so. Accordingly, the agreement must be enforced according to its terms.

Because I conclude that this action is arbitrable under the arbitration clause in the Retail Installment Sales Contract, I need not address GM Financial's argument that it is also arbitrable under the arbitration clause in the Buyer's Order. *See generally* MTC.

Accordingly, the following is **ORDERED:**

1.   Defendant AmeriCredit Financial Services, Inc.'s Motion to Compel Arbitration and Stay (Doc. 13) is **GRANTED.**

2.   This action is **REFERRED** to arbitration under the parties' agreement.

3.    This action is **STAYED** pending arbitration.

4.    The parties must file a status report on **September 17, 2025**, and every

ninety days thereafter, apprising the Court of the arbitration's progress.

The parties must file a notice within fourteen days of the conclusion of

the arbitration proceeding.

5.    The clerk is directed to **ADMINISTRATIVELY CLOSE** this case.

**ORDERED** in Tampa, Florida, on June 20, 2025.

_Kathryn Kimball Mizelle_
Kathryn Kimball Mizelle
United States District Judge